**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. BECKER, Individually** | ) | |
| **and for Others Similarly Situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00285** |
| | ) | **Judge Aleta A. Trauger** |
| **DELEK US ENERGY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

This is a putative collective action under the Fair Labor Standards Act ("FLSA"). The plaintiff, joined by at least one opt-in plaintiff, brings suit against defendant Delek US Energy, Inc. ("Delek"), seeking to recover unpaid overtime wages and other damages. (Compl., Doc. No. 1 ¶ 1.)

Now before the court are two similar and closely related motions to intervene under Rule 24(a) or 24(b) of the Federal Rules of Civil Procedure, the first filed by Cypress Environmental Management-TIR, LLC ("Cypress") and the second, by Kestrel Field Services, Inc. ("Kestrel"). (Doc. Nos. 29, 31.) To quote another district court faced with a nearly identical motion to intervene in a factually similar lawsuit, while this case appears at first glance to be a "garden-variety" FLSA overtime-pay dispute under the FLSA,

> it doesn't take the informed reader long to get the sense that this case is only the
> latest skirmish in a running battle between interest groups in employment litigation,
> with one side looking to weaponize the sweeping effect of mandatory individual
> arbitration while the other side seeks to neutralize it. In the oil and gas industry
> alone, federal courts across the country are being asked with increasing regularity
> to parse the language of arbitration agreements and waivers of collective action to
> determine whether and how they apply to the claims and parties before them. The

stakes are high, for the threat posed to an oil and gas employer by a two-hundred-plaintiff class action in a courtroom is much more ominous than if those plaintiffs were splintered up and compelled to pursue their claims in individual arbitrations. The flip side is severe, too, for the financial incentive of workers (and their counsel) to bring these cases is vastly different depending on whether they are class actions heard by judges and juries or individual disputes decided by arbitrators.

*Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at *1 (D.N.M. July 15, 2020) (Report and Recommendation, objections pending).

On this particular battlefield, however, the plaintiffs are ultimately outgunned. The court is constrained by existing precedent to grant the motions, following in the footsteps of the vast majority of district courts confronted with the same question in just the past few months.

## I.     PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

Plaintiff Michael Becker filed this lawsuit on April 1, 2020. He alleges that Delek, a "downstream energy company with refineries and retail stores throughout the south and southwest United States," employed him as an inspector from September 2018 until November 2018. (Doc. No. 1 ¶¶ 2, 10.) He alleges that, although he and other similarly situated individuals regularly worked twelve to fifteen hours per day, six to seven days per week, and were paid a flat sum for each day worked, regardless of the number of hours worked that day (or in that work week), they did not receive pay at the overtime rate required by the FLSA for all work in excess of forty hours per work week. He specifically alleges that Delek was his employer in that Delek "controlled all of the significant or meaningful aspects of [Becker's] job duties," "enforc[ed] mandatory compliance with Delek's policies and procedures," and "directly determined Becker's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working for Delek." (*Id.* ¶¶ 33–36.)

A week after the Complaint was filed, Becker filed a Notice that Freddy Rojas had submitted his consent to opt in as a party plaintiff in this case. (Doc. No. 7, 7-1.)

An Initial Case Management Order was entered on June 1, 2020, setting dates for the amendment of pleadings, the filing of a motion for conditional class certification, and the conclusion of discovery. (Doc. No. 20.)

The plaintiff filed his timely Motion for Conditional Certification and Court-Authorized Notice to putative collective-action members on June 12, 2020. (Doc. No. 26.) On July 9, 2020, while briefing on that motion was ongoing, Cypress filed its Motion to Intervene and supporting Memorandum of Law. (Doc. Nos. 29, 30.) Kestrel filed its Motion to Intervene and Memorandum of Law the next day. (Doc. Nos. 31, 33.) The court thereafter stayed discovery and briefing on the Motion for Conditional Certification pending resolution of the Motions to Intervene. (Doc. No. 46.)

The plaintiff filed Responses in opposition to both motions (Doc. Nos. 52, 51); Cypress and Kestrel filed Replies (Doc. Nos. 54, 56.)

## II. STANDARD OF REVIEW

Cypress and Kestrel both cite Rule 24(a) and Rule 24(b) of the Federal Rules of Civil Procedure, which govern, respectively, intervention as of right and permissive intervention.

Under Rule 24(a), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Sixth Circuit has interpreted this rule as establishing four elements that all must be satisfied before intervention as of right will be granted: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240,

1245 (6th Cir. 1997); *see also Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 489 (6th Cir. 2014).

The Sixth Circuit has repeatedly recognized that the "factual circumstances considered under Rule 24(a) should be 'broadly construed in favor of potential intervenors,'" and "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Davis*, 560 F. App'x at 490 (6th Cir. 2014) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991), and *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)).

Under Rule 24(b), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). To intervene permissibly under Rule 24(b)(1)(B), a proposed intervenor "must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Once the prospective intervenor satisfies these requirements, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id.*

## III.    DISCUSSION

### A.    Cypress's Motion to Intervene

Cypress's Motion to Intervene is supported by the Declaration of Sharon Moyer, Vice President and Chief Human Resources Officer for Cypress Environmental Partners, L.P. ("CEP"). (Doc. No. 30-1 ¶ 2.) Moyers is a duly authorized custodian of records for CEP's affiliated entities, including Cypress. (*Id.*) She attests that Cypress employs inspectors to provide third-party inspection services to its customers, that Delek is one of its customers, and that Delek contracted with Cypress for inspection services with "field staffing provided by Cypress." (*Id.* ¶¶ 2, 4.) Moyer specifically avers that Becker was employed by Cypress to provide services on its behalf to Delek

from September 16, 2018 until October 26, 2018. (*Id.* ¶ 5.) Attached to Moyer's Declaration is Becker's Employment Agreement with Cypress, pursuant to which Becker acknowledged that his employment would be "based on a specific project to be performed for a designated customer." (Doc. No. 30-1, at 8.)

Moyer alleges that Cypress set Becker's salary and duties, determined that his duties and pay qualified him for the administrative exemption from the overtime requirements of the FLSA, 29 U.S.C. § 213(a)(1), and paid his salary. Becker's earning statements and a 2018 W-2 are attached to the Declaration. (Doc. No. 30-1, at 23–34.)

Becker's Employment Agreement incorporates an arbitration clause, which states in relevant part:

> The parties agree that any dispute, controversy or claim arising out of or related to in any way to [sic] the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma.

(Employment Agreement ¶ 5, Doc. No. 30-1, at 8.) The Employment Agreement also contains a class and collective action waiver, as follows:

> Employee and Employer expressly intend and agree that: (a) class action, collective action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Employment Agreement; (b) each will not assert class action or representative action claims against the other in arbitration or otherwise; and (c) Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. Further, Employee and Employer expressly intend and agree that any claims by the Employee will not be joined, consolidated or heard together with claims of any other employee. The validity and effect of this paragraph shall be determined exclusively by federal district or state district court of competent jurisdiction situated in Tulsa County, Oklahoma and not by an arbitrator.

(*Id.* ¶ 6.)

Relying heavily on opinions from five other district courts addressing the identical situation presented here, in many of which the plaintiffs were represented by the same attorneys or law firms as the plaintiff here and in several of which Cypress or Kestrel was the intervenor, Cypress argues that it should be granted leave to intervene as of right under Rule 24(a), because the motion is timely; it has a substantial legal interest in this case; disposition of the cases in its absence would impair its interests; and Cypress's interests are not adequately represented by Delek. In the alternative, it contends that permissive intervention under Rule 24(b) is warranted. The court will first address intervention as of right.

  *1.*  *Timeliness*

To determine timeliness, the Sixth Circuit reviews five factors, including "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990), *quoted in Davis,* 560 F. App'x at 490.

Cypress maintains simply that its motion is timely, having been filed just three months after the suit was initiated and well before the expiration of any scheduling deadlines, such that intervention will not prejudice the litigants' rights or unduly delay the proceedings.

The plaintiff, in response, argues that consideration of the second of the two factors referenced in *Jansen*, the purpose for the intervention, is the proper focal point of the timeliness element and is sufficient to establish that the motion is not timely. With regard to this factor, Becker argues that Cypress seeks to intervene in order to allege that it, instead of Delek, is Becker's

employer and, in this manner, to protect Delek, Cypress's client "by sheltering it under [Cypress's] arbitration agreement." (Doc. No. 52, at 3.) That is, its purpose is to "alter the nature of Becker's action and the bargain Cypress made with Becker." (*Id.*) Becker asserts that this is not a proper purpose of intervention.

The court, however, is not persuaded that this alleged—and likely—purpose is actually illegitimate.[1] If the court presumes for a moment that Cypress is correct—that it was Becker's sole employer and that, if there was an FLSA violation, it alone should be liable—then Cypress's willingness to assume responsibility in order to shield its purportedly innocent business partner from unwarranted liability and the associated costs of litigation appears, in some sense, noble, rather than nefarious. In addition, Cypress's position appears to be that the arbitration clause and collective action waiver in its Employment Agreement are broad enough to cover the claims asserted by Becker against Delek. Enforcement of an allegedly valid agreement is not an improper purpose. Moreover, the fact that Cypress is able to satisfy the other three elements required for intervention as of right, as discussed below, further points away from a conclusion that its motive, as alleged by the plaintiff, is improper.

    2.    *Substantial Legal Interest*

"Proposed intervenors must show they have a substantial interest in the subject matter of litigation. However, [the Sixth] Circuit subscribes to a rather expansive notion of the interest sufficient to invoke intervention of right [and] rejects the requirement of a specific legal or

---

[1] It is unclear why a proposed intervenor's purpose is considered to fall within the rubric of timeliness. Regardless, the Sixth Circuit's focus on this element has suggested, for instance, that "[i]f a third party seeks merely an opportunity to present an argument or expertise, participation as an *amicus curiae* may adequately protect its interests." *Davis*, 560 F. App'x at 490 (citation omitted). Cypress's posture here is not that of an *amicus curiae*.

equitable interest." *Davis*, 560 F. App'x at 495 (internal quotation marks and citations omitted). The court's "inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Id.*

Cypress asserts that it has at least three articulable legal interests in this litigation. It claims that: (1) because it is Becker's actual employer, exclusively controlled his pay, and determined that his job was overtime exempt under the FLSA, Cypress has an interest in the adjudication of the central issue in this case—whether Becker's pay and duties qualified him as exempt from overtime pay under the FLSA; (2) if Becker is able to show that Delek also qualifies as his "employer" under the FLSA, then Cypress's interest in intervening is amplified in light of the FLSA's provision for joint and several liability among joint employers, 29 C.F.R. § 791.2(f); and (3) as Becker's actual employer, Cypress has a legitimate interest in enforcing Becker's arbitration agreement.

The plaintiff argues that these interests do not qualify as substantial legal interests, that they are, instead, speculative and peripheral, because "Becker seeks to hold Delek liable only for its own FLSA violations, not those of Cypress (or any other joint employer)." (Doc. No. 52, at 4.) Consequently, he asserts, "Cypress's arbitration agreement, which applies only to claims against Cypress, is not triggered because only Delek's employment practices are at issue." (*Id.*) That is, although Cypress acknowledges that Becker has not brought claims against Cypress, even tangentially, the plaintiff asserts that Cypress's interest in this case, and interest in proceeding in an arbitral forum, is purely speculative and that the plaintiff, as master of his own complaint, *see Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (6th Cir. 2020), is not required to bring claims against Cypress, regardless of whether it may qualify as a joint employer. (*Id.* at 5 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.")).)

The plaintiff also argues that the case upon which Cypress relies, *Bagne v. JP Morgan Chase Bank, N.A.*, No. 08-cv-13646, 2008 WL 11355527 (E.D. Mich. Dec. 31, 2008), is distinguishable. There, although the proposed intervenor was not named as a defendant, "the Complaint directly note[d] [its] participation in two of the five counts." *Id.* at *4. The defendant was specifically alleged to have acted "in concert" with the proposed intervenor and to have conspired with it and "knowingly participated in the conspiracy." *Id.* On this basis, the court was "only able to conclude that [the proposed intervenor] ha[d] a substantial legal interest in the litigation." *Id.* In this case, to the contrary, the plaintiff asserts that Delek is being asked to be accountable for its own actions, not those of Cypress, and its liability is not contingent on any action or failure to act on the part of Cypress. Its "liability under the FLSA will be determined by examining whether it has an employer-employee relationship with Becker, and, if so, whether it paid overtime as require[d]." (Doc. No. 52, at 6.) Thus, Becker claims, "[w]hat Cypress did to Becker is almost irrelevant. . . . Try as it might, Cypress cannot make this litigation about how it treated its employees." (*Id.*)

Becker further argues that (1) Cypress's potential liability, if sued, does not give it an interest in the action against Delek, because Becker does not seek to hold Delek liable for Cypress's FLSA violations (if any) and Cypress does not allege that Delek has made a demand for indemnity; (2) *res judicata* would not apply to Cypress if Delek is found liable; (3) even if it was a joint employer, Cypress is not a necessary or indispensable party for purposes of Rule 19(a), the requirements for which track those under Rule 24(a), because "[t]he absence of [one joint employer] does not in any way prevent the Court from resolving [plaintiff's] claims against [another joint employer]," under the FLSA, *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 159 (D. Mass. 2019), *opinion clarified*, 404 F. Supp. 3d 529 (D. Mass. 2019);

(4) Cypress's claim that it paid and classified Becker does not mean that Delek cannot be liable under the FLSA, since the FLSA contemplates the possibility of multiple employers, each of which has an independent duty to comply with the FLSA, *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942–43 (8th Cir. 2008); (5) Cypress's business practices are not on trial here, so Cypress has no "interest" in vindicating its practices; and (6) Cypress cannot show that it has an interest in the arbitration of claims against Delek, because the plaintiff did not agree to arbitrate his claims against Delek. The plaintiff asserts, in summary, that, for Cypress to have a sufficiently substantial legal interest to permit it to intervene, the court "would have to find that there is no way for Becker to establish Delek's liability under the FLSA without also showing that Delek was liable for Cypress's violations." (Doc. No. 52, at 9.) He also contends that the recent cases on which Cypress relies were either incorrectly decided or are distinguishable, in particular on the basis that Cypress does not allege that Delek has made a demand for indemnity.

Cypress construes Becker's Response as effectively conceding that Cypress functioned as his employer and that his suit is against Delek as a joint employer, as a result of which Becker's attempt to disavow any intention to bring a joint-employment suit rings hollow. (*See* Doc. No. 54, at 1.) It also argues that all of Becker's arguments have been rejected by the recent opinions cited by Cypress from which Becker seeks to distance himself.

Indeed, the plaintiff's effort to ward off Cypress's intervention is overshadowed by a growing number of opinions issued in just the past few months granting intervention under Rule 24(a) in virtually indistinguishable circumstances. *See, e.g.*, *Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646 (D.N.M. July 15, 2020) (report and recommendation, objections lodged); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947 (W.D. Ky. June 30, 2020); *Ferrell v. SemGroup Corp.*, No. 19-

CV-00610-GKF-JFJ, 2020 WL 4281302, at *1 (N.D. Okla. June 12, 2020); *Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-CV-01080-LPL, 2020 WL 2105064, at *1 (W.D. Pa. Apr. 13, 2020), *report and recommendation adopted*, No. 2:19-CV-1080, 2020 WL 2104911 (W.D. Pa. May 1, 2020); *Snow v. Silver Creek Midstream Holdings LLC*, No. No. 19-CV-241-J, 2020 U.S. Dist. LEXIS 119371 (D. Wyo. Mar. 3, 2020).

In *Bock*, the plaintiffs, represented by essentially the same attorneys as Becker, sought to bring a collective action under the FLSA against a different oil and gas company for which they and others similarly situated performed pipeline inspection services. 2020 WL 3989646, at *1.[2] The entity seeking to intervene was Kestrel, which also seeks to intervene in this case. The magistrate judge's Report and Recommendation specifically found that Kestrel had substantial legal interests at stake, including the enforcement of the plaintiff's arbitration agreement and class action waiver, protecting its business model and pay structure, defending its position as the plaintiff's sole or joint employer, and limiting its financial exposure occasioned by an indemnity provision in the Master Services Agreement between it and the defendant. The plaintiffs in that case raised arguments similar to those raised here. The court acknowledged that the parties viewed the facts very differently from each other but nonetheless concluded that Kestrel had clearly articulated substantial legal interests at stake in the dispute:

> Whatever else can be said of the disparate manner in which the parties view the relevant facts, this much is clear: Kestrel has an interest in this litigation despite Plaintiffs strategically omitting any mention of its name in the Complaint. First, seeking to vindicate its [arbitration agreement ("AA")] with Plaintiffs is a legitimate interest for Kestrel to protect. As a signatory to that AA – indeed, as its sole drafter – Kestrel has an interest in pursuing what it views as the benefit of its bargain. Denying Kestrel the ability to intervene and – at the very least – make the

---

[2] *Bock* was issued after Cypress filed its Motion to Intervene and shortly before the plaintiff filed his Response. Cypress did not reference it, so the plaintiff, although his counsel was undoubtedly aware of it, did not attempt to distinguish it.

argument that its AA be honored by its former employees is a result that Rule 24(a) is designed to prevent.

Just as important, the "transaction" (using Rule 24(a)'s term) that lies at the heart of Plaintiffs' Complaint is the employment relationship they allege they had with Defendant. Although Plaintiffs bobbed and weaved around it in their Complaint, their *sub silentio* employment relationship (if any) with Defendant did not exist independent of their overt and documented employment relationship with Kestrel. . . .

Furthermore, Plaintiffs' criticism about what they were – and were not – paid is a criticism of a pay structure imposed upon them by Kestrel. Plaintiffs' contentions about whether they were "exempt" or "non-exempt" under wage-and-hour laws relate just as much if not more to Kestrel's personnel management structure as to Defendant's. Whether Plaintiffs agree or not, this lawsuit is every bit the full-scale assault on Kestrel's business model as it is on Defendant's. . . .

*Id.* at *4.

Similarly, in *Altenhofen*, the plaintiff brought an FLSA collective action against the entity for which he had performed pipeline inspector services. The defendant denied that it had an employment relationship with the plaintiff and asserted that he was employed instead by Cleveland Integrity Services, Inc. ("CIS"), which assigned the plaintiff to work for the defendant. CIS brought a motion to intervene. CIS, like Cypress, presented numerous documents establishing the existence of an employment relationship between it and the plaintiff, including an arbitration agreement. CIS claimed substantial legal interests in the subject matter of that case, including, as here, an interest in resolution of the question of whether the plaintiff's pay and duties qualified him for an overtime exemption under the FLSA, since CIS characterized the plaintiff as exempt and "exclusively controlled his pay," 2020 WL 3547947, at *3, and liability is joint and several among joint employers under the FLSA, which meant it might be jointly liable if the plaintiff were able to show that the defendant also employed him. The Western District of Kentucky found that the FLSA's provision for joint and several liability among joint employers standing alone was a sufficient legal interest to justify intervention in that case. *Altenhofen*, 2020 WL 3547947, at *3

(citing *Kans. Public Emp. Retirement Sys. v. Reimer & Kroger Assoc., Inc.*, 60 F.3d 1304 (8th Cir. 1995)); *accord Robertson*, 2020 WL 2105064, at *3 (same); *Snow*, 2020 U.S. Dist. LEXIS 119371, *8–9 (same); *Ferrell*, 2020 WL 4281302, at *3 (same).

The court here is constrained to reach the same conclusion: the potential that Delek may point a finger at Cypress as a joint or even sole employer and the FLSA's provision for joint and several liability among joint employers together give rise to a substantial legal interest on the part of Cypress in this action. The arguments the plaintiff raises to the contrary are simply beside the point. The fact that Cypress is not a necessary or indispensable party for purposes of Rule 19(a) is irrelevant, and the broad and permissive construction of Rule 24(a) espoused by the Sixth (and every other) Circuit essentially means that Cypress needs only to articulate concrete, identifiable legal interests, which it has done. It does not need to show that "there is no way for Becker to establish Delek's liability under the FLSA without also showing that Delek was liable for Cypress's violations." (Doc. No. 52, at 9.) And the fact that it has not raised the possibility of being required to indemnify Delek as one of its interests does not negate its articulation of other substantial legal interests. *Accord Uniloc 2017 LLC v. AT&T Mobility LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117, at *3 (E.D. Tex. Apr. 23, 2019) (noting that Rule 24 requires only that "an intervenor have '*an* interest' in the property or transaction that is the subject of the action," so the fact that the intervenor did "not supply *all* of the accused products does not mean it fails to have an interest within the context of Rule 24").

### 3. Potential Impairment of Ability to Protect that Interest

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied." *Davis*, 560 F. App's at 495 (quoting *Grutter*, 188 F.3d at 399) (emphasis added). At this step, too,

the proposed intervenor's burden is "minimal"—he must only show that denial of his request to intervene "may" impair his interests. *Id.*

Cypress argues that disposing of this action without it would impair its ability to protect its two articulated interests—its classification of Becker as FLSA exempt and its arbitration agreement with Becker. If it is not permitted to intervene, it claims, it would be "deprived of the 'opportunity to raise arguments and defenses,'" specifically, its argument that Becker was exempt from the FLSA's overtime requirements and its argument that Becker is required to arbitrate. (Doc. No. 30, at 8 (quoting *Clean Earth, Inc. v. Endurance Am. Ins.*, No. 15-6111(FLW), 2016 WL 5422063, at *4 (D.N.J. Sept. 28, 2016)).) Cypress also includes under this element the possibility of reputational injury, "because any adverse judgment could be viewed by Cypress' other customers as a lack of capacity in managing its own workforce and its obligations under the FLSA." (Doc. No. 30, at 8 (citing *Uniloc 2017*, 2019 WL 1773117, at *3 (granting intervention to manufacturer because patent infringement allegations against its customer put the manufacturer's "customer base and reputation at risk")).)

Becker argues that reputational injury standing alone is not a protectable legal interest and that Cypress has no "proof" that its reputation would be damaged by an adverse judgment against Delek. The court agrees. More to the point, however, Cypress does not actually posit that its interest in its reputation is a substantial legal interest. Thus, that Cypress's reputation might be impaired by litigation against Delek, standing alone, would not be sufficient to justify intervention under Rule 24(a).

Becker also argues that Cypress "cannot be deprived of the opportunity to raise" its legal arguments regarding Becker's exempt status and the enforceability of its arbitration clause in the Employment Agreement "before adjudication of its own liability to Becker." (Doc. No. 52, at 17.)

That is, the plaintiff contends, Cypress has not been sued, so it has no reason to defend itself. And, because Becker did not agree to arbitrate its claims against Delek, Cypress's interest in arbitration is not affected by a lawsuit against Delek. In reply, Cypress argues that Rule 24(a) distinguishes between claims and interests, such that a conclusion that "a motion to intervene is unnecessary unless a plaintiff has already pleaded a claim against the intervenor" would effectively "repeal Rule 24." (Doc. No. 54, at 3.) In addition, regarding its interest in arbitration, Cypress contends that Becker "puts the arbitrability cart before the intervention horse," as "the mere potential that Becker's arbitration agreement [with Cypress] might cover his claims [against Delek] is enough to warrant intervention." (Doc. No. 54, at 4.)

This factor is permissive and broad, as set forth above. It requires only that a substantial legal interest "may" be impaired. *Davis*, 560 F. App's at 495. In light of the breadth of this inquiry, the court finds that Cypress's interest in putting forth all of its arguments as to why Becker is exempt from the FLSA's overtime provisions and its interest in resolving the question of whether the arbitration clause and collective action waiver in Becker's Employment Agreement with Cypress extend to Becker's claims against Delek may be impaired if these questions are resolved in Cypress's absence. Thus, this element, too, is met.

### 4. Inadequacy of Representation

As with the other elements required for showing an entitlement to intervene, the burden to show inadequacy of representation is "minimal." *Davis*, 560 F. App'x at 495 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "The proposed intervenor need show only that there is a *potential* for inadequate representation." *Grutter*, 188 F.3d at 400 (emphasis in original). "[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.*

Cypress argues that its interests would be inadequately represented by Delek, because, although their interests are similar, they diverge insofar as Delek denies that it has an employment relationship with Becker while Cypress admits that it does have such a relationship, the terms of which are governed by a written agreement that encompasses an arbitration clause; Delek may have an incentive to settle the claims against it rather than pursuing a defense of Cypress's practices; and Cypress, rather than Delek, is in possession of the documents and witnesses necessary to defend the payment practices relevant to Becker's claims. (Doc. No. 30, at 9.) In response, the plaintiff claims only that Delek and Cypress have the same "ultimate objectives: they both seek to place liability on Cypress as Becker's employer and seek to compel Becker to arbitrate pursuant to his agreement with Cypress." (Doc. No. 52, at 19.) He argues that, as a result, "the representation of the intervenor's interest by the existing party is *presumed to be adequate*" and that Cypress cannot overcome that presumption (*Id.* at 18, 19.)

The plaintiff, in effect, is arguing that Delek should undertake the responsibility of presenting whatever arguments Cypress might or could raise and, specifically, of vindicating Cypress's arbitration agreement. He has not shown, and cannot show, that Delek's and Cypress's interests are identical, however, precisely because Delek does not have an arbitration agreement with Becker and may not raise all the same arguments as Cypress would in defense of arbitration or, more generally, in defense of the pay practices at issue. Although Delek's and Cypress's interests are clearly similar, there is at least a possibility that they will diverge.

5. *Conclusion*

Cypress has established each of the factors necessary for intervention as of right under Rule 24(a). The court will grant its motion on that basis, without reaching Cypress's arguments for permissive intervention under Rule 24(b).

## B.     Kestrel's Motion to Intervene

Kestrel's Motion to Intervene and supporting Memorandum are directed toward the claims of opt-in plaintiff Freddy Rojas, whose opt-in notice was filed just six days after the Complaint was filed. Kestrel's arguments are virtually indistinguishable from those asserted by Cypress, except that Kestrel also filed in connection with its motion a copy of the Master Work Agreement ("MWA") entered into by and between Kestrel and Delek governing the work to be performed for Delek by Kestrel employees, such as Rojas. (Doc. No. 33-2, at 6–13.) The MWA incorporates an indemnity provision, pursuant to which Kestrel agreed to "indemnify and hold harmless" Delek "against any and all claims, demands or causes of action, and all costs, losses, liabilities, expenses and judgments . . . including reasonable attorneys' fees and costs of court" incurred in connection with claims brought by any Kestrel employee "based upon, in connection with, resulting from or arising out of [Kestrel's actions or inactions under" the MWA. (Doc. No. 33-2, at 8.)

In addition, the Arbitration Agreement executed by Rojas in conjunction with being employed by Kestrel differs from the arbitration clause incorporated in Becker's Employment Agreement with Cypress, insofar as it is a separate, stand-alone agreement and, as such, is somewhat more detailed than the clause contained in Cypress's Employment Agreement. It, like the Cypress Employment Agreement, contains a class and collective action waiver.

Otherwise, like Cypress, Kestrel articulates the relevant standards for intervention under Rule 24(a) and argues that: (1) the motion is timely; (2) it has protectable interests at stake in this litigation; (3) its interests may be impaired if it is not permitted to intervene; and (4) Delek may not adequately represent its interests. Its arguments under each of these categories are largely the same as those posited by Cypress, but it includes some additional arguments. In particular, Kestrel adds that its MWA with Delek includes an indemnity provision, which both creates an additional protectable legal interest and gives rise to the risk of the impairment of such interest, since it means

that Kestrel risks liability under the FLSA regardless of the fact that it has not actually been named as a defendant. Kestrel also argues that the effect of *stare decisis* resulting from an adverse decision in a case involving its practices but in which it had no voice constitutes a possible impairment of its ability to protect its interests.

The court finds that Kestrel has established a right to intervene under Rule 24(a), for the same reasons as those discussed above in connection with Cypress's motion, amplified by the indemnification provision in the MWA. The court will grant Kestrel's motion as well on this basis, without addressing its arguments under Rule 24(b).

## IV.    CONCLUSION

For the reasons forth herein, the separate Motions to Intervene (Doc. Nos. 29, 31) will be granted, and the proposed pleadings and motions submitted by the intervenors will be docketed separately. Depending upon the resolution of the intervenors' respective motions to compel arbitration, the scope and structure of their participation in this lawsuit will be addressed in later proceedings. *See United States v. City of Detroit*, 712 F.3d 925, 931–32 (6th Cir. 2013) (recognizing that "Rule 24 also provides for limited-in-scope intervention" (citing Fed. R. Civ. P. 24, advisory committee's note, 1966 amendments ("Intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."))

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge