## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **MICHAEL J. BECKER, Individually and for Others Similarly Situated,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**DELEK US ENERGY, INC.,** )<br><br>**Defendant,** )<br><br>**and** )<br><br>**CYPRESS ENVIRONMENTAL MANAGEMENT–TIR, LLC, and KESTREL FIELD SERVICES, INC.,** )<br><br>**Defendant-Intervenors.** ) | **Case No. 3:20-cv-00285**<br>**Judge Aleta A. Trauger** |

## MEMORANDUM

Plaintiff Michael Becker has filed a collective-action Complaint asserting claims to recover unpaid overtime wages and other damages from defendant Delek US Energy, Inc. ("Delek") under the Fair Labor Standards Act ("FLSA"). Becker brings the case on behalf of himself and "other similarly situated workers" who were employed by Delek. Shortly after the Complaint was filed, Freddy Rojas joined the action as an opt-in plaintiff. (*See* Doc. No. 7-1.)

Now before the court are the following motions: (1) Motion to Transfer, or Alternatively, Compel Arbitration (Doc. No. 60) filed by intervenor Cypress Environmental Management–TIR, LLC ("Cypress") addressed specifically to the claims brought by named plaintiff Michael Becker; (2) Motion to Compel Arbitration and Stay Proceedings (Doc. No. 84), filed by intervenor Kestrel Field Services, Inc. ("Kestrel"), which addresses the claims brought by Rojas; and (3) Delek's

Motion to Compel Arbitration of Claims of Michael Becker and Freddy Rojas (Doc. No. 69).[1] For the reasons set forth herein, all three motions will be denied.

## I.     PROCEDURAL BACKGROUND

In the collective action Complaint, Becker describes Delek as a "downstream energy company with refineries and retail stores throughout the south and southwest United States." (Doc. No. 1 ¶ 2.) He alleges that Delek "employs inspector personnel to carry out its work" (*id.*) and that he was one such employee. He expressly claims that he and others were employed by Delek and that Delek's employment and pay practices violated the FLSA. Becker filed a Motion for Conditional Certification and Court-Authorized Notice to class members in June 2020. (Doc. No. 26.)

Shortly thereafter, although the Complaint does not reference any other putative employer or rely on a joint-employer theory of liability, Cypress and Kestrel filed Motions to Intervene, asserting that *they* were the actual employers of Becker and Rojas, respectively, during the relevant time periods and that they alone determined the plaintiffs' status as overtime exempt under the FLSA, paid them a daily rate, and assigned them to work for their customer, Delek. The intervenors also insist that Becker's and Rojas' claims arise out of their employment relationships with Cypress and Kestrel; that the plaintiffs signed arbitration agreements, which included collective action waivers, with the intervenors; and, therefore, that they should be compelled to individually arbitrate any employment-related claims against Delek as well, even though Delek is not a signatory to either arbitration agreement. Copies of the arbitration agreements between Cypress and Becker and between Kestrel and Rojas were filed as exhibits to the Motions to Intervene. Also

---

[1] Cypress and Kestrel are sometimes collectively referred to herein as the "intervenors." Plaintiff Becker and opt-in plaintiff Rojas are collectively referred to as "plaintiffs."

submitted as exhibits were the intervenors' proposed Motions to Compel Arbitration. Delek, at the same time, filed a Motion to Stay (Doc. No. 39),[2] asking the court to stay discovery and to defer consideration of class certification until after resolution of the Motions to Intervene and Motions to Compel Arbitration.

The court granted Delek's Motion to Stay (Doc. No. 46) and the Motions to Intervene (Doc. No. 59), specifically finding that both intervenors made the requisite minimal showing of the relevant factors for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure: that their applications were timely, that they had substantial legal interests implicated by the case that might be impaired in the absence of intervention, and that Delek's interests were sufficiently different from theirs that Delek might not adequately represent their interests. (*See* Memorandum, Doc. No. 58.) The court also ordered that the proposed Motions to Compel Arbitration and supporting documents be docketed separately, and it set a briefing schedule for those motions.[3] Becker and Rojas filed separate Responses (Doc. Nos. 66, 67); Cypress and Kestrel filed separate Reply briefs (Doc. Nos. 72, 73). Meanwhile, Delek filed its own Motion to Compel Arbitration and supporting Memorandum (Doc. Nos. 69, 70), to which Becker responded in opposition (Doc. No. 74[4]). Delek filed a Reply. (Doc. No. 79.)

---

[2] Kestrel also filed a Motion to Stay (Doc. No. 36), which the court denied as moot (Doc. No. 49).

[3] Per the court's Order, the Clerk filed as separate documents Kestrel's proposed Motion to Compel Arbitration and supporting Memorandum submitted by Kestrel as exhibits to its Motion to Intervene. However, because the documents as originally submitted were not signed by counsel as required by Rule 11 and contained blanks where Kestrel intended to reference specific documents by CM/ECF number, Kestrel subsequently was granted permission to refile the signed and completed documents. (*See* Doc. Nos.

[4] The court notes that the pagination of the plaintiff's Response brief differs from that applied by CM/ECF, the electronic docketing system, because the plaintiffs did not count the page containing the case caption as page one. The court will use the pagination applied by CM/ECF when referring to this document.

## II.     LEGAL STANDARDS

The Federal Arbitration Act ("FAA") allows parties to a "contract evidencing a transaction involving commerce" to agree that certain disputes between them arising from such "contract or transaction" will be decided by an arbitrator rather than by a court. 9 U.S.C. § 2. Described by the Supreme Court as the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), Section 2 of the FAA further provides that any such agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section embodies "a liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The principal purpose of the FAA is to ensure the enforcement of private arbitration agreements according to their terms; the broader purpose of allowing parties to submit grievances to arbitration is to facilitate "efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 344 (citations omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation."). At the same time, it is well established that arbitration is simply a "matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent.").

The FAA provides that a party aggrieved by another party's failure or refusal to arbitrate in accordance with a written arbitration contract may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C.

§ 4. The court reviewing the petition generally must "determine whether the parties agreed to arbitrate the dispute at issue." *Stout*, 228 F.3d at 714. "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014); *see also Great Earth Cos. v. Simon*, 288 F.3d 878, 889 (6th Cir. 2002) ("In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." (internal citation omitted)).

A court considering whether to enforce an arbitration agreement must first determine whether the parties agreed to arbitrate. *Stout*, 228 F.3d at 714 (6th Cir. 2000). In doing so, the court applies the applicable state law pertaining to contract formation. *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019). Whether an arbitration agreement was formed is always a question to be resolved by the court. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Assuming the court finds that a contract was actually formed, the party opposing arbitration may also put forth "generally applicable state-law contract defenses" to the validity or enforceability of the contract, including, but not limited to, such defenses as "fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The court must address these issues as well, "absent a valid provision specifically committing such disputes to an arbitrator." *Granite Rock Co.*, 561 U.S. at 299.

That is, when an arbitration agreement includes such a provision—a "delegation provision"—the analysis changes. A delegation provision is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The Supreme Court has recognized that parties "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. A delegation provision is "simply an additional, antecedent agreement that the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Thus, a delegation provision is severable from the remainder of the contract, and "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* In other words, when there is a delegation provision, and the party seeking to avoid arbitration challenges the validity or enforceability of the arbitration agreement as a whole, or the enforceability of a contract of which the arbitration agreement is simply a part, any such challenges must be deferred to, and resolved by, the arbitrator. However, if the party opposing arbitration challenges the validity or enforceability of the delegation provision *per se*, then the court, rather than the arbitrator, must address those challenges. *See Rent-A-Ctr.*, 561 U.S. at 71 ("If a party challenges the validity under § 2 of the *precise agreement to arbitrate at issue*, the federal court must consider the challenge before ordering compliance with that agreement under § 4." (emphasis added)).

Courts must generally look to state law to interpret arbitration agreements, including delegation provisions. However, "the Supreme Court has adopted an additional interpretive rule" specifically pertaining to delegation provisions: "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide such issues." *Blanton v. Domino's Pizza*

*Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (citations omitted). This standard, which is governed by federal law rather than state law, effectively "reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Id.*

## III.    DISCUSSION

In this case, Becker and Rojas do not contest that they actually entered into arbitration agreements with Cypress and Kestrel, and they do not refute the defendant's and intervenors' representations regarding the content of those agreements. Rather, they contest the scope of the arbitration agreements as a matter of contract interpretation—that is, whether the arbitration agreements extend to the plaintiffs' claims against Delek, a non-signatory to the arbitration agreements. They also dispute whether the court or an arbitrator should embark upon an analysis of that issue. Specifically, as discussed below, they challenge Delek's ability to enforce the delegation provisions contained in the arbitration agreements.

### A.    Delek's Motion

Although filed later than the intervenors' motions, the court will consider Delek's motion first, because Delek is the actual named defendant in this case with indisputable standing to seek disposition of the plaintiffs' claims against it. Cypress and Kestrel, on the other hand, although they have been permitted to intervene, are not referenced, even inferentially, in the Complaint, much less named as defendants. In addition, as will be seen, consideration of Delek's motion largely resolves the arguments posited by the intervenors as well.

#### 1.    *Factual Background*

As a factual matter, Delek specifically denies that it employed Becker (Answer, Doc. No. 11 ¶ 4) and asserts that Cypress employed Becker as an electrical inspector and assigned him to provide inspection services on its behalf to Cypress customers, including Delek. Delek and Cypress allege that Becker was an Electrical Inspector on the Cypress "team providing services to

Delek" from September 16, 2018 until October 26, 2018. (Moyers Decl., Doc. No. 30-1 ¶ 5.) Delek and Cypress assert that Cypress determined Becker's pay and set his duties. (*Id.* ¶¶ 11–15.) They claim that, as a condition of his employment, Becker signed Cypress's Employment Agreement, which contains an arbitration clause. (*Id.* ¶ 8.) Becker, however, alleges that Delek employed him as an inspector from September to November 2018, required him to work more than forty hours per week, and paid him a day-rate with no overtime compensation as required by the FLSA. (Doc. No. 1 ¶¶ 2–5, 10–11, 23–37.) Becker submitted a Declaration in connection with his Motion for Conditional Certification in which he claims that he "worked exclusively" for Delek from approximately August through December 2018. (Becker Decl., Doc. No. 26-2 ¶ 1.)

Although there is a dispute as to whether Delek or Cypress (or both) employed Becker, there is no dispute that Becker signed the Employment Agreement with Cypress and that the Employment Agreement contains an arbitration clause (the "Cypress AA"). The Cypress AA states, in relevant part:

> 5.    The parties agree that any dispute, controversy or claim arising out of or related to in any way to [sic] the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma. Arbitration shall be administered under the laws of the American Arbitration Association in accordance with American Arbitration Association Employment Arbitration Rules and Mediation Procedures in effect at the time the arbitration is commenced. The rules are available online at adr.org/employment. You may also call the American Arbitration Association at 800-778-7879 if there are questions about the arbitration process.

> 6.    Employee and Employer expressly intend and agree that: (a) class action, collective action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Employment Agreement; (b) each will not assert class action or representative action claims against the other in arbitration or otherwise; and (c) Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. Further, Employee and Employer expressly intend and agree that any claims by the Employee will not be joined, consolidated or heard together with claims of any other employee. The validity and effect of this paragraph shall be

determined exclusively by federal district or state district court of competent jurisdiction situated in Tulsa County, Oklahoma and not by an arbitrator.

(Cypress AA ¶¶ 5–6, Doc. No. 30-1, at 8.)

According to Delek and the materials submitted by Kestrel, Kestrel employed opt-in plaintiff Rojas to provide inspection services on its behalf to Kestrel's customers, including Delek, from February through May 2019. Delek asserts that Rojas was Kestrel's employee, as Kestrel hired him and paid his salary. (*See* Clarke Decl., Doc. No. 70-2 ¶¶ 7–10.) Rojas asserts that Delek was his actual employer and that he "worked exclusively" for Delek from February through May 2019. (Doc. No. 26-3 ¶ 2.) However, there is no dispute that he executed a Mutual Arbitration Agreement ("Kestrel AA") with Kestrel that provides, in relevant part, that he and Kestrel mutually agreed to

> resolve by arbitration all past, present, or future claims or controversies, including, but not limited to, claims arising out of or related to [Rojas'] application for employment, employment, or termination of [his] employment that the Company may have against [Rojas] or [Rojas] may have against: (i) the Company or its subsidiaries or affiliated entities ("Kestrel Entities"); (ii) Kestrel Entities officers, directors, employers, or agents in their capacity as such or otherwise; (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents and/or (iii) [sic] all of their successors or assigns. **All disputes covered by this Agreement will be decided by an arbitrator through individual arbitration, not by way of court or jury trial.**

(Kestrel AA ¶ 1, Doc. No. 70-2, at 3.) The Kestrel AA defines "Covered Claims" to include "wage and hour claims" under federal law. (*Id.* ¶ 1(a).) The Kestrel AA expressly provides that, "[e]xcept as stated in section 3, the Class Action Waiver, this Agreement also applies to disputes arising out of or relating to the enforceability, applicability, revocability, formation, or validity of the Agreement or any part of it." (*Id.*) The referenced Class Action Waiver states that both parties "waive any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action," and the arbitrator "shall have no authority under this Agreement to hear or arbitrate any class or collective action dispute." (*Id.* ¶ 3.) However, only a court has jurisdiction to

determine whether the Class Action Waiver is unenforceable or invalid for any reason. (*Id.*)

Delek argues that, based on the plain language of the two agreements and the applicable law, (1) the question of whether the claims against Delek must be submitted to arbitration is an arbitrability question that must be decided by an arbitrator, because the agreements "clearly and unambiguously" delegate all issues of arbitrability to the arbitrator, including the question of whether a non-signatory can enforce the agreement (Doc. No. 70, at 5–6); and (2) alternatively, if the court reaches the question, Becker and Rojas should be compelled to arbitrate because they clearly agreed to arbitrate their employment-related claims and are equitably estopped from asserting that they did not agree to arbitrate their claims against Delek (*id.* at 9–10).

       2.    *Who Decides?*

For purposes of the present motions, there is no dispute that the Cypress AA binds its signatories (Becker and Cypress) and that the Kestrel AA binds its signatories (Rojas and Kestrel), such that, if the plaintiffs had opted to bring their FLSA claims against Cypress and Kestrel, they would have been required to do so through arbitration. In their Response to Delek's motion,[5] the plaintiffs aver that "Delek misstates the law by suggesting that this Court is powerless to do anything but compel Plaintiffs to arbitrate simply because Delek cites agreements containing delegation clauses." (Doc. No. 74, at 2.) Rather, the plaintiffs argue, because they specifically challenge Delek's right to enforce the *delegation provisions* of the arbitration agreements, the court must address that challenge. (*Id.* (citing *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020)).) They also argue that the fact that they executed arbitration agreements with Cypress and Kestrel containing delegation clauses does not mean that they are required to

---

[5] Although filed on behalf of Becker, the Response addresses Delek's motion as it pertains to both Becker and Rojas.

arbitrate arbitrability even with Delek, a non-signatory to the agreements. Because arbitration agreements are simply contracts, and delegation provisions must be strictly construed, "Delek cannot end run the question of whether an agreement exists between Becker and Delek by invoking the delegation clause." (Doc. No. 74, at 8 (citing *Granite Rock Co.*, 561 U.S. at 315).)

More specifically, they contend that "[t]he Court must decide whether Delek has any right to enforce the delegation clauses in Plaintiffs' agreements with Cypress or Kestrel" (Doc. No. 74, at 9) and that the Supreme Court's decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), does not govern the outcome here. "Plaintiffs challenge whether any agreement exists that allows Delek to require them to arbitrate their claims, or even arbitrability." (Doc. No. 74, at 10; *see id.* at 10 ("The Court must decide whether the Cypress Agreement or Kestrel Agreement reflects a clear and unmistakable intent to arbitrate whether Delek can enforce the Cypress Agreement or Kestrel Agreement (and any delegation provisions specifically.").) Finally, they argue that Delek's reliance upon the Sixth Circuit's decision in *Blanton v. Domino's Pizza Franchising LLC*, is unwarranted, because, in that case, the plaintiff "did not challenge the 'existence' of the arbitration agreement" or "whether Domino's had any right to enforce the delegation clause." (Doc. No. 74, at 11.) The plaintiffs here, by contrast, purport to "challenge the existence of any agreement to arbitrate, and any agreement to arbitrate arbitrability, with Delek." (*Id.*)

In *Blanton*, the plaintiff had been working for one Domino's Pizza franchise for several years when he began to work simultaneously for a second Domino's franchise. When he was hired by the second franchise, he signed an arbitration agreement with that franchise that "require[d] him to arbitrate a wide array of issues related to his employment." 962 F.3d at 844. The first franchise fired the plaintiff shortly after he was hired by the second, because it understood its

franchise agreement with Domino's to require it to do so in order to allow the plaintiff to work for the second franchise. The plaintiff sued Domino's, asserting that its franchise agreement violated federal antitrust law and state law. Domino's moved to compel arbitration based on the arbitration provision in the agreement between the plaintiff and the second franchise. The plaintiff opposed the motion on the basis that Domino's was not a party to the agreement. The district court granted the motion, and the Sixth Circuit affirmed. The appellate court held that the question of whether the arbitration agreement covered the plaintiff's claims against Domino's, a non-signatory, was one going to "arbitrability" and that, by adopting the American Arbitration Association's Rules ("AAA Rules"), the parties "clearly and unmistakably" agreed to "arbitrate 'arbitrability.'" *Id.* at 845; *see id.* at 846 ("officially" holding that "the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability'").

At the same time, however, the court observed in a footnote that its opinion did *not* address the antecedent question of whether Domino's, as a non-signatory, had a specific right to enforce the delegation provision in the arbitration agreement:

> The underlying dispute in this case is whether Domino's (as a non-signatory) has any right to enforce the arbitration agreement as a whole. And both parties have litigated this case on the view that the first question we must answer is whether [the plaintiff] agreed to arbitrate that question of "arbitrability." But there might be another, antecedent question here—namely, *whether Domino's has any right to enforce the specific provision of the agreement in which [the plaintiff] purportedly agreed to arbitrate "arbitrability."* Because that is a distinct question that is not before us, we express no views on it.

*Blanton*, 962 F.3d at 845 n.1 (emphasis added) (citing *Rent-A-Ctr.*, 561 U.S. at 69–71, as distinguishing between challenges to an arbitration agreement as a whole from challenges to a specific agreement to arbitrate "arbitrability").

Similarly, in *Rent-A-Center*, the Supreme Court expressly recognized that the "written

provision . . . to settle by arbitration" that the petitioner, Rent-A-Center, sought to enforce was the delegation provision itself, "the provision that gave the arbitrator 'exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement.'" *Rent-A-Ctr.*, 561 U.S. at 72. The respondent, however, challenged the enforceability of the arbitration agreement as a whole, without addressing the delegation provision. *See id.* ("Nowhere in his opposition to Rent-A-Center's motion to compel arbitration did [the respondent] even mention the delegation provision."). As a result, because the respondent did not "challenge[] the delegation provision specifically," the Court found that it was required to "treat it as valid under § 2" and "enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* Thus, although the situation did not present itself in *Rent-A-Center*, the Court implicitly recognized that, where a party actually *does* challenge the validity of the delegation provision itself, the reviewing court, rather than the arbitrator, would be required to resolve that challenge.

The case now before this court involves the precise situation recognized by, but not presented in, *Rent-A-Center* or *Blanton*: the plaintiffs challenge the validity and enforceability of the delegation provision itself. In short, because the plaintiffs expressly challenge the validity of the delegation provision, the court must consider its enforceability in the specific context of the facts presented here.

### 3. Can Delek Enforce the Delegation Provision?

As pertains to the Cypress AA executed by Becker, Delek and Cypress both argue only that the agreement "clearly and unmistakably" delegated arbitrability through the agreement's incorporation of the AAA Rules, which themselves authorize arbitrators to decide issues of arbitrability, based on *Blanton*. *See Blanton*, 962 F.3d at 845–46 (finding that an arbitration agreement's incorporation of the AAA Rules constitutes "clear and unmistakable" evidence that

the parties agreed to arbitrate arbitrability, including questions about the "scope" of the agreement (citing *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019)). Regarding the Kestrel AA, Delek and Kestrel argue that the agreement "clearly and unmistakably" delegates arbitrability to the arbitrator through the unambiguous language in the contract, which states: "All disputes covered by this Agreement will be decided by an arbitrator through individual arbitration, not by way of court or jury trial." (Doc. No. 33-2, at 3, Kestrel AA ¶ 1.)[6]

As an initial matter, the court accepts—because the parties do not argue otherwise—that the Cypress AA and Kestrel AA both contain language that constitutes "clear and unmistakable" evidence of an intent to delegate questions of arbitrability to the arbitrator, *Blanton*, 962 F.3d at 844, insofar as any such challenges to arbitrability are raised in disputes between signatories to the arbitration agreements. However, based on the plain language of the contracts, the court cannot find that they clearly and unmistakably delegate to the arbitrator the question of whether a *non-signatory* to the agreements can enforce the delegation provisions in disputes involving a signatory and a non-signatory. The Employment Agreement between Cypress and Becker states that the parties to it are Cypress and Becker and that it is binding on the parties and their "personal representatives, successors and assigns." (Doc. No. 30-1, at 10.) It does not authorize enforcement by third parties and certainly cannot be deemed to "clearly and unmistakably" delegate to an arbitrator the question of whether a non-party to the agreement can enforce any part of it. Likewise, the Kestrel AA is between Rojas and Kestrel; in it, those parties mutually agree to resolve by arbitration any disputes between them. (Doc. No. 33-2, at 1.) It contains no language evidencing

---

[6] Delek actually argues only that the Kestrel AA "clearly and unmistakably" delegates arbitrability to the arbitrator through its incorporation of the AAA Rules. This proposition is questionable, as the Kestrel AA actually seems to incorporate the AAA Rules only under certain circumstances and for certain purposes. (*See* Doc. No. 33-2, at 4, Kestrel AA ¶ 5.)

an intention to permit Kestrel's customers to enforce any part of the agreement.

Moreover, as set forth above, whether a non-signatory to an arbitration agreement may enforce that agreement is governed by state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 531 (5th Cir. 2019); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293 (10th Cir. 2017); *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). In the context of a challenge to a delegation provision specifically, that means that the question of whether a non-signatory to a delegation provision in an arbitration agreement can enforce the delegation provision is a question of state law. A party challenging a delegation clause "may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions." *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226–27 (3d Cir. 2018) (construing *Rent-A-Center*, 561 U.S. at 74, as suggesting that, had a party challenged a delegation provision based on the same arguments raised with respect to other provisions of the arbitration agreement, that would have been sufficient for a court to consider the delegation provision challenge); *accord Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) (quoting *MacDonald*).

While contending that the matter is one for the arbitrator, Delek also argues in the alternative, as a matter of substantive law, that the plaintiffs are equitably estopped from pursuing their claims against Delek in court rather than through litigation under applicable state law. The plaintiffs disagree, arguing that, under the particular facts presented here, equitable estoppel does not apply to require them to arbitrate their claims against Delek.

a)      *The Cypress AA*

Both parties accept that Oklahoma law governs the question of whether Delek, as a non-signatory, can enforce the Cypress AA. Delek insists that, although the Oklahoma Supreme Court

has not addressed whether estoppel may be used to compel arbitration claims by a signatory plaintiff against a non-signatory defendant, the Oklahoma Court of Civil Appeals has done so and, Delek claims, has "held that Oklahoma law estops signatory plaintiffs from avoiding their arbitration agreements by bringing claims against non-signatories" under circumstances similar to those presented here. Specifically, citing *Cinocca v. Orcrist, Inc.*, 60 P.3d 1072, 1074 (Okla. Civ. App. 2002), and *High Sierra Energy, L.P. v. Hull*, 259 P.3d 902 (Okla. Civ. App. 2011), Delek argues that "Oklahoma law estops signatory plaintiffs from avoiding their arbitration agreements by bringing claims against non-signatories" whenever (1) "a plaintiff must rely on the terms of the written agreement containing the arbitration clause in asserting his claim," and (2) "when a plaintiff advances a claim based on 'substantially interdependent and concerted misconduct by both a signatory and a non-signatory.'" (Doc. No. 70, at 12.) Delek insists that the plaintiffs' "only path to liability is to establish that Delek was a joint employer with Cypress and Kestrel, respectively," and that, consequently, there is no "doubt that [their] claims against Delek are inextricably intertwined with their respective employment with Cypress and Kestrel." (Doc. No. 70, at 16.)

This court, in accordance with two recent opinions from the Northern District of Oklahoma, finds that Delek cannot show that equitable estoppel applies here. The Oklahoma Supreme Court has not adopted the theory of equitable estoppel that Delek propounds, and, even assuming that it would adopt the theory as articulated by the Oklahoma Court of Civil Appeals if directly presented with the issue, that theory does not apply on the facts here. *Accord Ferrell v. SemGroup Corp.*, No. 19-CV-00610-GKF-JFJ, 2020 WL 5492989, at *1 (N.D. Okla. Sept. 9, 2020) (denying motion to compel arbitration brought by defendant SemGroup and intervenor Cypress), *appeal docketed*, No. 20-5093 (10th Cir. Sept. 29, 2020); *Reeves v. Enter. Prods. Partners, LP*, No. 19-CV-570-

JED-FHM, 2020 WL 616166 (N.D. Okla. Feb. 10, 2020) (denying two motions to compel arbitration), *appeal docketed*, No. 20-5020 (10th Cir. Feb. 14, 2020). Moreover, those cases upon which Delek relies that have compelled signatories of arbitration agreements to arbitrate claims against non-signatories have done so under circumstances that are inapposite to those presented here.

First, the Oklahoma Supreme Court has not adopted the theory of equitable estoppel on which the defendant relies, even when it might have done so. In *Carter v. Schuster*, 227 P.3d 149 (Okla. 2009), the court cited a decision by the Second Circuit Court of Appeals that identified several theories for binding non-signatories to arbitration agreements, including "estoppel, when the claims are integrally related to the contract containing the arbitration clause." *Id.* at 153 (citing *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776–79 (2d Cir. 1995)). However, the court went on to apply a traditional theory of estoppel, requiring proof of five elements, including a false representation or concealment of facts by one party and detrimental reliance by the other. *Id.* at 154. More recently, the Oklahoma Supreme Court again applied a traditional theory of estoppel to determine whether a non-signatory was estopped from challenging an arbitration provision. *Williams v. TAMKO Bldg. Prods., Inc.*, 451 P.3d 146, 153–54 (Okla. 2019).

Under this formulation of the doctrine, Becker would not be equitably estopped from avoiding arbitration, because Delek has not argued, or produced evidence showing, that it detrimentally relied on false statements made by Becker. However, as the court in *Ferrell* recognized, both of the Oklahoma Supreme Court decisions are factually inapposite and, as such, "of little utility." *Ferrell*, 2020 WL 5492989, at *5. They involved signatories who sought to enforce arbitration agreements against non-signatories. Here, a non-signatory seeks to enforce an arbitration agreement against a signatory. In *Carter*, the court did suggest that it might "be more

willing to allow a non-signatory to enforce an arbitration agreement against a signatory because '[u]nder such facts, the nonsignatory is agreeing to arbitrate. The signatory is merely being held to his previous agreement to arbitrate.'" *Baker v. Cajun Energy Servs. & Rentals, LLC*, No. MO:19-CV-37-DC, 2020 WL 3579206, at \*5 (W.D. Tex. Mar. 24, 2020) (quoting *Carter*, 227 P.3d at 156).

Because the Oklahoma Supreme Court has not expressly addressed the question but has expressed openness to the theory, it is appropriate to consider opinions by the Oklahoma Court of Civil Appeals, which has. In *Cinocca*, the plaintiff sued Rainey, a partner at the law firm that previously employed her as an independent contractor, and Orcrist, a computer consulting company retained by the defendant to remove files and data belonging to the law firm from the plaintiff's personal computer. The plaintiff alleged that Orcrist impermissibly accessed her personal computer and deleted software at Rainey's direction. *Cinocca*, 60 P.3d at 1072–73. Rainey and Orcrist both sought to compel arbitration pursuant to a "Separation Agreement" executed by Cinocca and Rainey, on behalf of himself individually and the law firm. Cinocca argued that Orcrist could not compel arbitration of the claims against it because it was not a signatory to the agreement. The trial court agreed, but the appellate court reversed, adopting a theory of equitable estoppel articulated by the Eleventh Circuit under similar circumstances. *Id.* at 1074 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)).

The court held that the theory applies in two circumstances: (1) "where the signatory must rely on the written agreement in asserting its claims against the nonsignatory"; and (2) "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory." *Id.* In considering whether either of these circumstances existed in that case, the court looked to the allegations in the complaint, based on which the court

found that it was "clear" that the plaintiff's claims against both Rainey and Orcrist were "inherently inseparable" and that the claims against the non-signatory and the signatory were so "intertwined" that "application of equitable estoppel is warranted." *Id.* at 1075.

In *High Sierra Energy*, also relied upon by Delek, the court applied the theory adopted in *Cinocca*, again finding that a non-signatory to an agreement may compel arbitration in "limited circumstances," including equitable estoppel, "when the claims are integrally related to the contract containing the arbitration clause,'" *High Sierra Energy*, 259 P.3d at 908 (quoting *Carter*, 227 P.3d at 153), and "'when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory,'" *id.* (quoting *Cinocca*, 60 P.3d at 1074).

In *Ferrell*, the U.S. District Court for the Northern District of Oklahoma was called upon to apply these principles to a case involving a factual scenario almost identical to that presented here. The plaintiff brought suit under the FLSA on behalf of himself and a putative collective against defendant SemGroup Corporation ("SemGroup"), alleging that he and others similarly situated had been employed by SemGroup as inspectors and that they had worked in excess of forty hours per week but had not been paid the overtime rate required by the FLSA, as a result of SemGroup's misclassification of them as independent contractors. 2020 WL 5492989, at *1. SemGroup denied that it employed the plaintiff. It brought a motion to compel arbitration, based on the arbitration agreement the plaintiff had executed with Cypress—virtually identical to the one between Becker and Cypress in this case. Cypress was permitted to intervene, and it, too, filed a motion to compel arbitration. The plaintiff opposed arbitration and argued that the court was required to determine whether SemGroup, as a non-signatory, could compel arbitration.

The defendant and Cypress both argued that the question of whether SemGroup could

enforce the arbitration agreement was a question of arbitrability and that the arbitration agreement clearly and unmistakably delegated arbitrability issues to the arbitrator through its adoption of the AAA Rules. They argued that, under *Henry Schein*, the court was required to refer to the arbitrator the arbitrability question. The district court there, applying Tenth Circuit precedent, concluded that it, rather than the arbitrator, was required to "address the gateway question of whether the parties have consummated such an agreement at all." *Ferrell*, 2020 WL 5492989, at *3 (quoting *Campbell Invs., LLC v. Dickey's Barbecue Rests., Inc.*, 784 F. App'x 627, 630 n.3 (10th Cir. 2019)). The court, therefore, was required to consider whether the parties had agreed to delegate the question of whether the plaintiff had agreed to arbitrate with a non-signatory.

The court in *Ferrell* concluded that equitable estoppel did not apply, because the allegations in the complaint did not "rely on the written agreement" between the plaintiff and Cypress in bringing the FLSA claims against the non-signatory defendant. *Ferrell*, 2020 WL 5492989, at *8 (quoting *Cinocca*, 60 P.3d at 1074). Notably, the court found that, for such "reliance" to exist, "the contract must form the legal basis of those claims; *it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them.*" *Id.* (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011)); *see also High Sierra Energy*, 259 P.3d at 907 (concluding that the claims were "integrally related" to the agreement containing the arbitration clause, because "the foundation" of the claims "all rest[ed] upon the benefits" expected from the written agreement). Specifically, the court in *Ferrell* stated:

> Ferrell asserts a statutory FLSA claim against SemGroup as his employer, not a contractual claim based on the Agreement. Ferrell's FLSA claim requires proof only "(1) that he . . . was a covered employee of the defendant, (2) that the plaintiff worked overtime hours and the defendant did not appropriately compensate the plaintiff for the time worked; and (3) that the plaintiff or the defendant was covered by the FLSA." Thus, Ferrell's claim relies or rests on statutory rights and duties,

rather than contractual rights or duties under the Agreement.

*Ferrell*, 2020 WL 5492989, at *8 (quoting *Murphy v. AllStaff Homecare, LLC*, No. 16-CV-2370-WJM-MEH, 2019 WL 4645440, at *3 (D. Colo. Sept. 24, 2019)).

The same conclusion applies here. Becker brings claims solely against Delek, premised upon allegations that Delek is his employer. The Employment Agreement between Becker and Cypress does not require arbitration of any disputes between Becker and Delek. Rather, the arbitration provision is expressly limited to claims arising out of or related to "the *parties'* employment relationship or termination of that relationship." (Cypress AA ¶ 5, Doc. No. 30-1, at 8.) Moreover, the Complaint does not reference, even remotely, Becker's alleged employment relationship or Employment Agreement with Cypress. Instead, the plaintiff asserts FLSA claims solely against Delek. Under the law of this circuit, to prevail on this claim Becker will have to prove "(1) an employer-employee relationship [between Becker and Delek]; (2) that the employer or its employees are engaged in interstate commerce; (3) that the employee worked more than forty hours; and (4) that overtime was not paid." *Stansbury v. Faulkner*, 443 F. Supp. 3d 918, 925 (W.D. Tenn. 2020) (citation omitted).

Becker's ability to recover will sink or swim based on his ability to prove an employment relationship between him and Delek, which is entirely independent of the question of whether he was in an employment relationship with Cypress. The Sixth Circuit has interpreted the very broad definition of the terms "employee" and "employ" adopted by the FLSA, *see* 29 U.S.C. § 203(d), (g), to mean that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015) (internal quotation marks and citations omitted). To assist in the application of this "economic-reality test," the Sixth Circuit has identified a non-exclusive list of factors that may be considered, including:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . . [6)] whether the service rendered is an integral part of the alleged employer's business.

*Id.* (citation omitted). In addition to these factors, the Sixth Circuit has also considered "whether the business had authority to hire or fire the plaintiff, and whether the defendant-company maintains the plaintiff's employment records." *Id.* (internal quotation marks and citations omitted). While no single factor is determinative; "[a] central question is the worker's economic dependence upon the business for which he is laboring." *Id.* (citation omitted).[7] The question of whether an employment relationship existed between Becker and Delek, based on these factors, is wholly independent of Becker's employment agreement (or arbitration agreement) with Cypress.

In sum, the first situation, in which the Oklahoma Court of Civil Appeals has recognized that principles of estoppel may compel a signatory to arbitrate claims it brings against a non-signatory, does not exist here: the plaintiff does not rely on his written agreement with Cypress in asserting his claims against Delek. *Cinocca*, 60 P.3d at 1074; *accord Ferrell*, 2020 WL 5492989, at *10 ("Ferrell's FLSA claim is not sufficiently related to the Agreement containing the arbitration provision."); *Reeves*, 2020 WL 616166, at *6 ("In [*Cinocca*], the plaintiff's claims related to the 'rights and duties' arising out of the plaintiff's separation agreement. Similarly, in *High Sierra*, the plaintiff's claims rested on the benefits it had expected to receive under the purchase agreement. Here, the plaintiffs claim that Enterprise was an employer within the meaning of the FLSA, and that Enterprise misclassified them as independent contractors, thereby depriving them

---

[7] Further, if a worker is found to be "jointly employed by two entities, each of [them] is responsible for complying with the FLSA." *Skills Dev. Servs., Inc. v. Donovan*, 728 F.2d 294, 300 (6th Cir. 1984). Here though, the plaintiff does not allege a joint-employment relationship and does not intend to prove that he was employed by Cypress at all.

of mandatory overtime wages. Nothing in these claims relate[s] to the substantive rights and duties arising from the plaintiffs' employment agreements with Cypress and Kestrel.").

The second situation in which estoppel might apply under Oklahoma law is "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory." *Cinocca*, 60 P.3d at 1074. In this case, Becker, the signatory, does not raise any allegations concerning misconduct by Cypress at all, much less misconduct that is "interdependent and concerted" with that of Delek. The allegations of interdependent conduct are raised by Delek and Cypress, not the plaintiff. As the court in *Ferrell* found under virtually identical circumstances:

> SemGroup and TIR [Cypress] next contend that Ferrell alleges substantially interdependent and concerted misconduct by the signatory and non-signatory. However, unlike in *Cinocca* and *High Sierra*, Ferrell asserts no claims against the signatory— TIR. In fact, Ferrell's Collective Action Complaint is silent as to TIR . . . . TIR is not explicitly mentioned and therefore the Complaint does not expressly allege any misconduct by TIR. Nor would such an allegation implicate TIR, because, as conceded by SemGroup, SemGroup was TIR's client, rather than the reverse. Instead, the Class Action Complaint specifically alleges that SemGroup controlled Ferrell's hours of work and rates of pay. Although SemGroup and TIR contend that Ferrell must necessarily rely on a joint employer theory of liability, "[d]efendant has been punching at a ghost. However much it may want to, Defendant is not permitted to select the theory or theories of liability that its litigation adversary must pursue. It is the Plaintiff[], after all, who [is] the master[] of [his] Complaint." *Bock* [*v. Salt Creek MidStream LLC*, No. 19-1163 WJ/GJF], 2020 WL 3989646, at *19 [(D.N.M. July 15, 2020)].
>
> Regardless, SemGroup's liability does not require any imposition of liability upon TIR. Even if TIR and SemGroup constitute joint employers, "the employment relationship test is the same whether there is one putative employer or multiple" and "the test is applied to each putative employer individually." *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 159 (D. Mass. 2019). That is, if SemGroup constitutes an employer, even a joint employer, it would be jointly and severally liable for any overtime wages owed. *See* 29 C.F.R. § 791.2(f).
>
> Nor does TIR's presence as an intervenor in this matter alter the analysis. Ferrell has asserted an FLSA claim against SemGroup, but has not explicitly asserted a claim against TIR. It is well-established that "one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration

of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944). Although TIR [may] be involved in this litigation, Ferrell's claim will be litigated only against SemGroup.

Finally, because the Class Action Complaint does not explicitly allege that TIR and SemGroup were joint employers or acted in a concerted manner, the cases from other jurisdictions that SemGroup and TIR cite in support of arbitration are distinguishable. For these reasons, the application of equitable estoppel to compel arbitration based on substantially interdependent and concerted misconduct by the signatory and non-signatory is not warranted.

*Ferrell*, 2020 WL 5492989, at *10–11 (record citations and footnotes omitted). Substitute the name "Becker" for that of Ferrell, and "Delek" for SemGroup, and the exact same analysis—and conclusion—applies here. Becker's Complaint does not allege or imply "interdependent and concerted misconduct by both the nonsignatory [Delek] and another signatory [Cypress]." *Cinocca*, 60 P.3d at 1074; *accord Reeves*, 2020 WL 616166, at *7 (finding that the plaintiffs had not alleged that the defendant "controlled or otherwise worked hand-in-glove" with Cypress and Kestrel and therefore had not alleged "the kind of 'substantially interdependent and concerted misconduct'" that the Eleventh Circuit and the Oklahoma Court of Civil Appeals have held to support the application of equitable estoppel").

Finally, the cases on which Delek relies for its assertion that "courts routinely estop plaintiffs from avoiding their arbitration agreements in FLSA cases involving joint employer allegations" (Doc. No. 70, at 10) are not persuasive, principally because Becker, unlike the plaintiffs in those cases, does not allege joint employment or joint wrongdoing, nor has he sued both the signatory and non-signatory.[8] Delek's reliance on *Robertson v. Enbridge (U.S.) Inc.*, No.

---

[8] *See, e.g.*, *Holts v. TNT Cable Contractors, Inc.*, NO. 19-13546, 2020 WL 1046337 (E.D. La. Mar. 4, 2020) (granting motion to compel arbitration brought by non-signatory to arbitration agreement based on estoppel, where the claims against the signatory and non-signatory defendants were "intertwined, indeed identical," and the plaintiff specifically alleged that the defendants jointly employed him and jointly failed to pay him overtime, and he "fail[ed] to distinguish the alleged wrongdoing between the two parties and allege[d] that neither party acted fully independently of the other"); *Bonner v. Mich. Logistics Inc.*, 250 F. Supp. 3d 388, 398 (D. Ariz.

19-1080, 2020 WL 5751641 (W.D. Pa. July 31, 2020), *report and recommendation adopted*, 2020 WL 5702419 (W.D. Pa. Sept. 24, 2020)), is also unavailing. The facts of that case are similar to those here, but the court there found, "[i]n light of *Henry Schein* and the clear language of the Arbitration Agreement," and more specifically the delegation provision therein, that the question of whether the defendant could enforce the arbitration agreement as a non-signatory was "a question for the arbitrator." *Id.* at *5. In other words, that court either was not confronted with, or did not recognize, the problem presented here, which is that the plaintiffs expressly challenge whether the non-signatory can enforce the delegation provision.

In sum, based on Oklahoma law applied to the particular facts of this case, the court finds that equitable estoppel does not apply, and Delek cannot establish that Becker is equitably estopped from avoiding arbitration of his claims against Delek. This means that Delek, as a non-signatory, cannot enforce the delegation provision against Becker. It further means, for the same reasons, that Delek cannot enforce the remainder of the arbitration agreement against Becker. Delek's Motion

---

2017) (granting motion to compel arbitration on equitable estoppel grounds against non-signatory defendants, based on Arizona law, where the plaintiffs sued both signatories and non-signatories and expressly alleged joint-employment and an interrelated relationship among all of the defendants); *Dennis v. United Van Lines*, No. 4:17CV1614 RLW, 2017 WL 5054709, at *4 (E.D. Mo. Nov. 1, 2017) (applying Delaware law of equitable estoppel to compel the plaintiff to arbitrate his claims against the non-signatory parent of the company with which he had signed an arbitration agreement, based upon the court's finding that the plaintiff's complaint alleged "concerted misconduct" by both the non-signatory and the signatory); *Doe #1 v. Deja Vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730, at *1 (M.D. Tenn. Sept. 1, 2017) (Trauger, J.) at *16 (finding that the plaintiff was "estopped from asserting that she did not agree to arbitrate her claims against the nonsignatories," who were sued along with the signatory to an arbitration agreement, where "the plaintiff's allegations, if true, establish that the nonsignatory defendants were alter egos of, or in an interdependent relationship with . . . the signatory defendant, and . . . her claims against the nonsignatories [were] inextricably 'intertwined with the underlying contract'" (quoting *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003))).

to Compel Arbitration of Becker's claims, therefore, will be denied.

b)      *The Kestrel AA and Rojas' Claims*

As set forth above, in the Kestrel AA, Rojas and Kestrel "mutually" agreed to arbitrate claims arising out of or related to Rojas' employment that Rojas might have against Kestrel (or defined affiliated entities) or that Kestrel might have against him. Delek is indisputably not a party to the agreement or a third-party beneficiary thereof. The question is whether Delek can nonetheless enforce the agreement, or, more specifically, the delegation provision therein, despite its status as a non-signatory. As discussed above, that question is one of state law. According to the plaintiffs, the Kestrel AA is governed by Texas law, based on Rojas' timesheet showing that he was already in Texas the day he signed the agreement. (Doc. No. 74-1.) According to Delek, which speculates that Rojas was still in his home state of Louisiana when the Kestrel AA was signed, the agreement is governed by Louisiana law. Under either state's law, equitable estoppel does not apply.

The Texas Supreme Court has recognized that, while "[a]rbitration is a creature of contract between consenting parties[,] a person who has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with non-parties" under certain circumstances. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 628 (Tex. 2018) (footnotes omitted). The Texas court in that case rejected the parties' contention that the question was one of arbitrability that had been delegated, by the arbitration agreement, to the delegator, stating: "[e]ven when the party resisting arbitration is a signatory to an arbitration agreement, questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator." *Id.* at 632. It expressly found that "[a] contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases." *Id.* at 632.

Addressing itself to the question of when a non-signatory can enforce a contract, it recognized that equitable estoppel was among several theories "in which arbitration with non-signatories may be required." *Id.* at 633. Regarding that theory, however, it noted that the state's equitable estoppel jurisprudence in the arbitration context is "rooted in a theory of promissory estoppel: 'When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement.'" *Id.* at 636 (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005)). Within that rubric, the court also recognized and applied the doctrine of "direct-benefits estoppel," which

> precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory. Simply put, a person cannot both have his contract and defeat it too.

*Id.* at 637 (internal quotation marks and footnoted citations omitted). Thus, "[w]hen a claim depends on the contract's existence and cannot stand independently[,] equity prevents a person from avoiding the arbitration clause that was part of that agreement." *Id.* On the other hand, "when the substance of the claim arises from general obligations imposed by state law . . . or federal law, direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen 'but for' the contract's existence." *Id.* (internal quotation marks and footnoted citations omitted).

As the court explained, the "archetypal" direct-benefits case involves a party opposing arbitration while at the same time seeking to enforce the terms of an agreement with an arbitration clause. *Id.* at 637. However, liability does not arise under this theory if there is a "mere relationship between the signatory's claims and the contract containing an arbitration provision." *Id.* at 637.

The defendant in that case, realizing that the claims at issue did not involve the detrimental reliance required by classic promissory estoppel or dependence on a contract as required by direct-

benefits estoppel, argued for the application of an "alternative estoppel theory," also called the "intertwined-claims" theory. *Id.* at 639. The Texas Supreme Court expressly declined to adopt this theory, even though the Fifth Circuit had predicted it would do so, *see id.* (citing *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 612 (5th Cir. 2016)), because the defendant had not shown that it would apply in that case.

Regardless, the court described this theory as "allow[ing] non-signatories to enforce an arbitration agreement if (1) they have a "close relationship" with a signatory to a contract with an arbitration agreement, and (2) the claims are "intimately founded in and intertwined with the underlying contract obligations." *Id.* at 639 (citations omitted). However, the "close relationship" requirement means a very close relationship, typically some type of corporate affiliation. *Id.* at 640. "To compel arbitration based on this alternative-estoppel theory, the relationship must be closer than merely independent participants in a business transaction." *Id.* at 640. The court also reaffirmed its previous rejection of the "even looser concerted-misconduct estoppel theory, because the FAA is only meant 'to make arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* at 639–40 (quoting *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007)).

Based on *Jody James Farms*, if Texas law applies to the facts of this case, that state's formulation of equitable estoppel would not permit Delek, as a non-signatory, to enforce the delegation clause in this case. As referenced previously, Delek has not established the detrimental reliance required by the classic promissory estoppel version of equitable estoppel, nor can it show that Rojas, in bringing FLSA claims against Delek, is "seeking to enforce the terms of an agreement with an arbitration clause," *id.* at 637, that is, the Kestrel AA. Finally, even assuming that the Texas Supreme Court would adopt the "alternative estoppel theory" under the right

circumstances, the relationship between Delek and Kestrel is not "sufficiently close" to warrant application of that theory, even if Delek could show—and it cannot—that Rojas' FLSA claims against it are "intimately founded in and intertwined with the underlying contract obligations." *Id.* at 639. The underlying contractual obligations concern Rojas' obligation to arbitrate with Kestrel all claims "arising out of or related to" his employment with Kestrel. It does not address claims against Kestrel's clients.

Delek's arguments fare no better under Louisiana law. While Louisiana law in this area is not well established, the best articulation of it comes from two recent appellate court decisions. *See ERG Enters., LLC v. Green Coast Enters.*, LLC, 299 So. 3d 1194 (La. Ct. App. 2020); *Traders' Mart, Inc. v. AOS, Inc.*, 268 So. 3d 420 (La. Ct. App.), *writ denied*, 280 So. 3d 1165 (La. 2019). In *Traders' Mart*, the court noted that, while "[a]rbitration agreements apply to nonsignatories only in rare circumstances," Louisiana recognizes two types of estoppel that may be used to compel arbitration between a signatory and a non-signatory. 268 So. 3d at 427. One of these, "direct benefits estoppel," has been applied to "bind a nonsignatory to an arbitration agreement when the nonsignatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract." *Id.* at 428. This version of estoppel "involves nonsignatories who, during the life of the contract, have embraced the contract despite their nonsignatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id.*; *see also ERG Enters.*, 299 So. 3d at 1199 (quoting *Traders' Mart*). In other words, this version would not apply in this case, where a non-signatory seeks to bind a signatory.

Equitable estoppel, on the other hand, "is the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance." *Traders' Mart*, 268

So. 3d at 427. "This version of estoppel applies only to prevent a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* This theory appears to apply in Louisiana "when the action is intertwined with, and dependent upon, that contract" containing the arbitration agreement. *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.*, 82 So. 3d 473, 478 (La. Ct. App. 2011).

In this case, as discussed above, Delek does not allege any form of detrimental reliance, and Rojas' claims against Delek do not presume the existence of his arbitration agreement with Kestrel. They do not arise from the contract or depend on it, and they cannot be deemed to be intertwined with it. Rojas asserts FLSA claims against Delek that are independent of any claims he might also have been able to bring—but has chosen not to bring—against Kestrel. This form of estoppel does not apply to his claims, even assuming that Louisiana law governs the construction of the contract.

In sum, principles of equitable estoppel, under Texas law or Louisiana law, do not permit Delek, a non-signatory, to enforce the delegation provision of the Kestrel AA against Rojas. Because Delek cannot enforce the delegation provision, that means the court must also determine whether Delek, under the same principles of equitable estoppel, can enforce the arbitration agreement as a whole. And, for the same reasons, it cannot. Delek's motion to compel Rojas to arbitrate his claims against it must be denied.

### B. Cypress's Motion

Cypress asserts that, since it has been "permitted to intervene as Becker's actual employer," and because it is a signatory to the Employment Agreement containing an arbitration clause, it is "plainly entitled to compel [Becker] to arbitrate his overtime claims under the [FLSA]." (Doc. No. 61, at 1.) The only "reservation," according to Cypress, is "whether that arbitration should also

include the same claims against Cypress' customer," Delek. (*Id.*) It further contends that, because the Cypress AA provides for arbitration in Tulsa, Oklahoma, this court must transfer the case to the Northern District of Oklahoma (in which Tulsa is situated), as that court is the only district court with jurisdiction under the FAA to compel arbitration in that district. Alternatively, Cypress argues that (1) the threshold issue of whether Becker is "obliged to arbitrate with Delek and Cypress is itself a matter to be determined by an arbitrator"; and (2) even if this court decides the arbitrability issue, Becker is bound to arbitrate these claims, because (a) the arbitration agreement on its face compels Becker to arbitrate "any claim arising from his employment," and (b) Becker is "estopped from denying that his claims against Delek are equally arbitrable." (*Id.* at 2.)

Importantly, Cypress was permitted to intervene under the very low threshold established by Rule 24(a), based on its showing that it has substantial legal interests in pressing its arguments for the enforcement of its arbitration agreement with Becker and defending its business model and that Delek might not adequately represent Cypress's interests. (*See generally* Doc. No. 58.) That it was permitted to intervene, however, does not mean that the Complaint can be construed as asserting claims against Cypress directly. Moreover, although Cypress frames the matter of transfer as a threshold issue, in reality, the threshold question is whether *Delek*, not Cypress, has the ability as a non-signatory to the agreement to enforce arbitration at all. That issue is one of arbitrability, as discussed above, which the Cypress AA delegates to the arbitrator. And in that regard, the court has already determined that the Cypress AA does not expressly cover Becker's claims against Delek and that equitable estoppel, under Oklahoma law, does not permit Delek to enforce either the delegation provision or the Cypress AA as a whole against Becker, including the forum selection clause.

Cypress does not raise any additional arguments that have not already been addressed

herein. It argues that *Henry Schein* compels arbitration of the arbitrability issue when the arbitration agreement contains a delegation clause, but that rule does not apply where a party challenges the validity of the delegation provision itself. *See Rent-A-Ctr.*, 561 U.S. at 69–71 (distinguishing between challenges to a specific agreement to arbitrate "arbitrability" and the broader arbitration agreement); *Blanton*, 962 F.3d at 845 n.1 (same, citing *Rent-A-Ctr.*). It argues that Becker agreed to arbitrate "all employment claims" (Doc. No. 61, at 8), but, as the court already noted, Becker actually agreed only to arbitrate claims arising out of the "parties' employment relationship or termination of that relationship or any breach of this agreement." (Cypress AA ¶ 5, Doc. No. 30-1, at 8.) The Employment Agreement expressly recognizes that the plaintiff would be employed to work for a designated Cypress "customer," but it does not require that claims the plaintiff might have against the customer be brought through arbitration.[9] Cypress relies upon *Snow v. Silver Creek Midstream Holdings, LLC*, No. 19-CV-00241-ABJ, 2020 WL 5551018 (D. Wyo. Apr. 14, 2020), but the court is not persuaded by the analysis in that opinion which, in any event, did not address the delegation question.

Cypress asserts that "Becker cannot claim that Delek is responsible to him as his joint employer for statutory employment violations under the FLSA while simultaneously denying that . . . Delek is also entitled to the protections of the arbitration agreement governing his employment claims." (Doc. No. 61, at 9.) It also argues that, "[a]bsent joint employment, there is no claim against Delek." (*Id.* at 12.) Cypress's position ignores the fact that Becker does not make any

---

[9] The Cypress Employment Agreement acknowledges that the plaintiff's employment is "based on a specific project to be performed for a designated customer." (Employment Agreement ¶ 2, Doc. No. 30-1.) It requires that any "concern or claim arising out of the working relationship" first be reported to Cypress, to give it the opportunity to resolve the matter. Cypress, however, has not pointed to this provision or argued that the plaintiff breached this part of the agreement by filing suit against Delek directly, rather than first bringing his claims to Cypress.

claims of joint employment and instead asserts that, under the FLSA, each employer has an independent duty to properly pay and classify its employees. (Doc. No. 66, at 17.) Becker, in fact, acknowledges that, if he fails to show that Delek actually employed him, his claims will fail. (*Id.* at 18.) The cases cited by Cypress, like those cited by Delek, that did compel plaintiffs to arbitrate claims against non-signatories are factually or legally inapposite.[10]

Finally, in its Reply, Cypress refutes Becker's assertion that it is attempting to enforce the Cypress AA on behalf of Delek as a third-party beneficiary without showing that this theory applies to the facts of the case. Regardless of whether Cypress asserts claims on its own behalf or on behalf of Delek, the Complaint does not assert claims against Cypress, and Delek has not shown that it is entitled to enforce the agreement. The fact that, as Cypress claims, it will be involved in the litigation regardless of whether the plaintiff has asserted claims against it appears to be a matter of Cypress's choice, not the plaintiff's.

The court will deny Cypress's Motion to Transfer, or Alternatively, to Compel Arbitration.

---

[10] *See, e.g.*, *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 119 (2d Cir. 2010) (affirming an order compelling arbitration against a non-signatory under New York law of estoppel, where the plaintiff sued both the signatory and non-signatory, and the court found that the complaint contained "numerous allegations" of "concerted actions [by] both defendants," making the claims against them "substantially interdependent"); *Townsend v. Stand Up Mgmt., Inc.*, No. 1:18CV2884, 2019 WL 3729266, at *8 (N.D. Ohio Aug. 8, 2019) (compelling arbitration against all defendants, non-signatories and signatories to the agreement alike, based on equitable estoppel principles permitting a non-signatory to compel arbitration when the plaintiff raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," where the plaintiffs bringing FLSA claims expressly alleged that the defendants were joint employers, "acted directly or indirectly in the interest of each other," shared operational control over the plaintiffs, and jointly set the rates and methods of compensation); *Kauffman v. U-Haul*, No. 5:16-cv-04580, 2018 WL 4094959, at *12 (E.D. Pa. Aug. 27, 2018) (similar); *Thompson v. Body Sculpt, Int'l, LLC*, No. 18-cv-1001, 2018 WL 3235545, *8 (E.D.N.Y. July 2, 2018) (similar); *Ortiz v. Volt Mgmt. Corp.*, No. 16-cv-07096-YGR, 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017) (similar).

### C. Kestrel's Motion

Kestrel seeks to compel opt-in plaintiff Freddy Rojas to individually arbitrate his claims against Delek. It also argues that, even if the court finds that Rojas should not be compelled to arbitrate, he should nonetheless be held to the provision of the Kestrel AA in which Rojas waived the right to bring or be a part of a class or collective action. Kestrel argues that either Tennessee law or Texas law governs the construction of its arbitration agreement, but it also maintains that the law does not differ substantially between the two states. (*See generally* Doc. No. 85.)

In his Response, besides the same arguments raised in response to Delek's motion, Rojas argues that the class or collective action waiver provision is not independent from the rest of the contract, such that, if Delek lacks authority as a non-signatory to enforce arbitration, it also lacks standing to enforce the collective action waiver.

The court agrees. The fundamental question here is whether *Delek* can enforce the Kestrel AA. As set forth above, the defendant has not established that equitable estoppel principles under either Texas or Louisiana (or Tennessee) law would permit it, as a non-signatory, to enforce the agreement *at all*—not the delegation provision, not the arbitration provision, and not the collective-action waiver. Kestrel has not raised any arguments not already addressed in connection with the discussion of Delek's motion that would persuade the court otherwise.

## IV. CONCLUSION

For the reasons set forth herein, all three Motions to Compel Arbitration (Doc. Nos. 60, 69, 84) will be denied. An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge